# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICKY M. PATTERSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 17-1322 |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| DR. MIN PARK, *et al*, | ) | ECF No. 5 |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

Pending before the Court is a Motion to Dismiss filed by Defendant Correct Care Solutions, LLC. (ECF No. 5.) For the following reasons, it will be denied as moot on the basis of the statute of limitations and the certificate of merit; and, it will be granted without prejudice as to the failure to state a Monell claim.

### A. **Background**

Plaintiff filed his Complaint on October 11, 2017. (ECF No. 1.) The Complaint alleges that while he was an inmate at SCI-Greene, the Defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment to the United States Constitution, and professionally negligent in their medical care, causing him a significant delay in the diagnosis and treatment of his Lymphoma. Presently before the Court is a Motion to Dismiss that was filed by Defendant Correct Care Solutions, LLC ("CCS") that was filed on December 12, 2018. (ECF Nos. 5, 6.) Plaintiff filed his response in opposition to the Motion on December 13, 2018. (ECF No. 11.) CCS filed a reply to Plaintiff's response on January 4, 2018. (ECF No. 12.) The matter is now ripe for review.

### B. **Factual Allegations**

Plaintiff's Complaint alleges that, from July 9, 2015 to present, CCS was contracted by the Pennsylvania Department of Corrections to provide health care service to prisoners at SCI-Greene.[1] (ECF No. 1 at ¶ 3.) He avers that Defendant CCS is vicariously liable for the acts of its employees, agents and/or servants, including Defendants Comer and Jin. Id. Plaintiff alleges that on February 14, 2014, while he was an inmate at SCI-Greene, he sought medical treatment due to a lump in his neck, accompanied by night sweats. Id. at ¶13. A chest x-ray and blood work were ordered, but no biopsy. Id. at ¶ 15. On February 26, 2014, he was told that the results were normal. Id. at ¶ 17. On February 28, 2014, Plaintiff was seen by PA Comer and Dr. Jin, who found a second enlarged lymph node in his neck. Id. at ¶ 20. No further tests were ordered. Id. Six months later, on September 3, 2014, Plaintiff was seen for a six month follow up examination. Id. at ¶ 25. At that time, PA Comer noted the continued presence of enlarged posterior cervical nodes and the continuation of the night sweats. Id. at ¶ 26. A metabolic panel complete blood count was ordered but no biopsy. Id. at ¶ 27. After a follow-up visit with PA Mattes, Plaintiff was sent to Dr. Jin for "lymph node excision and pathology." Id. at ¶¶ 30, 32. Plaintiff was seen by Dr. Jin on October 24, 2014. Id. at ¶ 33. No biopsy was ordered and Plaintiff was told to follow up in 6 weeks. Id. at ¶ 36. Dr. Jin saw Plaintiff on December 5, 2014, January 9, 2015, April 14, 2015 and June 10, 2015. Id. at ¶¶ 35, 37, 38, 39. On August 31, 2015, Plaintiff placed a sick call due to his swollen lymph nodes. Id. at ¶ 44. He was told to follow up with Dr. Jin, which he did on September 25, 2015, at which time he advised that he was beginning to lose weight. Id. at ¶¶ 45, 46, 47. On October 1, 2015, Dr. Jin performed a biopsy. Id. at ¶ 50. The pathology report revealed Classic Hodgkin Lymphoma. Id. at ¶¶ 50, 51.

---

[1] In the Complaint, Plaintiff states that they were contracted to provide health care service to prisoners at SCI-Albion, but given that the events giving rise to this action occurred while Plaintiff was an inmate at SCI-Greene, the Court will assume that this is a typo.

As a result, Plaintiff was sent to a CCS contracted oncologist and a PET scan was done. Id. at ¶¶ 52, 53,54. The scan showed that the lymphoma had metastasized to multiple other areas and was suggestive of stage IV Hodgkin's disease. Id. at ¶ 55.

C. **Standard of Review**

In deciding a motion to dismiss under Rule 12(b)(6), the courts apply the following standard, as recently reiterated by the court of appeals:

> A complaint may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." But detailed pleading is not generally required. The Rules demand "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n. 27 (3d Cir.2010). Although the plausibility standard "does not impose a probability requirement," *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955, it does require a pleading to show "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. A complaint that pleads facts "merely consistent with a defendant's liability ... stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citation and internal quotation marks omitted). The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679, 129 S.Ct. 1937.

*Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016).

Building upon the landmark Supreme Court decisions in *Twombly* and *Iqbal*, the court of appeals in *Connelly* reiterated the three-step process district courts must undertake to determine the sufficiency of a complaint:

3

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675, 129 S.Ct. 1937. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679, 129 S.Ct. 1937. *See also* Burtch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir.2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937.

*Id.* at 787. "This means that [the court's] inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George,* 641 F.3d 560, 563 (3d Cir. 2011).

The third step of this evaluation requires the court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "Although a plaintiff may use legal conclusions to provide the structure for the complaint, the pleading's factual content must independently 'permit the court to infer more than the mere possibility of misconduct.'" *Guirguis v. Movers Specialty Servs., Inc.*, 346 F. App'x 774, 776 (3d Cir. 2009) (quoting *Iqbal*, 129 S.Ct. at 1950)(other citation omitted).

At the motion to dismiss stage, "for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss[,]" but need only allege "'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Connelly,* 809 F.3d at 788-89 (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556)) (footnote omitted). Thus, the

4

court of appeals has summed up the *Twombly* pleading standard as follows: "'[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.'" *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).

D. **Discussion**

CCS originally argued that Plaintiff's claims were barred by the statute of limitations. The allegations began on February 14, 2014 and the Complaint was not filed until October 11, 2017, after the applicable two-year statute of limitations had run. As an alternative argument, CCS argued that Count I of the Complaint must be dismissed as CCS cannot be held liable under a *respondeat superior* theory of liability under §1983 and Plaintiff has not pled a claim under Monell v. New York City Dept. of Social Servs., 436 U.S.658 (1978). It also argued that the professional negligence claim must be dismissed as Plaintiff had not filed a certificate of merit as required by Rule 1042.3(a) of the Pennsylvania Rules of Civil Procedure. Following the filing of the Certificate of Merit and Plaintiff's Response, CCS withdrew its arguments as to the statute of limitations and the certificate of merit. (ECF No. 12, pp.1-2.) Remaining is the argument that Plaintiff has not adequately stated a Monell claim against CCS.

Plaintiff argues that his Complaint alleges a twenty-month pattern of CCS and, before it, Wexford Health Sources, employees routinely ignoring his medical needs. In paragraph 60 of his Complaint he states: "Defendants Wexford and/or CCS, at all times relevant hereto, had a policy and/or custom of acquiescing to unconstitutional practices within prisons, which thoroughly corrupted the medical system within SCI Greene and allowed these constitutional abuses to occur as alleged herein. (ECF No. 1 at ¶ 60.) He also alleges a policy or custom of inadequate response to citizen complaints of ineffective medical staff. Id. at ¶ 61. Finally, he makes a somewhat general allegation of failure to train. Id. at ¶ 62. He argues that, without

5

discovery, he cannot be more specific in his allegations.

Plaintiff has failed to allege that CCS had an affirmative policy or custom that caused his alleged harm. It is well-established that a "private corporation contracted by a prison to provide health care for inmates cannot be held liable on a *respondeat superior* theory; rather, it can only be held liable for constitutional violations if it has a custom[2] or policy[3] of exhibiting deliberate indifference to a prisoner's serious medical needs." Henry v. Buskirk, No. 08-1348, 2011 U.S. Dist. LEXIS 18644, at *9-11 (E.D. Pa. Feb. 24, 2011) (citing Natale v. Camden County Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003); Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690-92 (1978)).

The Third Circuit has held that

> [t]here are three situations were acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, though the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

---

[2] A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404 (1997).

[3] A policy, for purposes of § 1983, is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)).

Natale, 318 F.3d at 584 (internal quotations and citations omitted). The plaintiff bears the burden of proving that a "policymaker" is responsible for either the policy or the custom that caused the alleged constitutional violation. *See* id.

Plaintiff does not identify a policy or custom attributable to CCS. He has made conclusory allegations but these conclusions do not satisfy the test set forth by the Third Circuit in McTernan v. City of New York, 564 F.3d 636 (3d Cir. 2009). The factual allegations pertain to individuals employed by CCS and not to CCS itself. There are no factual allegations to support a claim of a custom or policy of mistreating inmates from a medical standpoint. Plaintiff has not alleged enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements as required by Connelly, 809 F.3d at 788-89 (quoting Phillips v. Allegheny County, 515 F.3d 224, 234 (3d Cir. 2008)). Plaintiff argues in his brief that he would like to conduct discovery into this issue. The Court cannot allow a fishing expedition. However, if Plaintiff discovers, from discovery of the named Defendants, that there may be some policy from CCS, whether written or not, then he may conduct further discovery into this matter. That can be dealt with later in the case. If he discovers that there is, in fact, a policy or custom of overlooking unconstitutional treatment of inmates, or a failure to train its doctors and physicians assistants, he may move to amend to so plead. A separate Order will issue.

Dated: January 23, 2018.

_____
Lisa Pupo Lenihan
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICKY M. PATTERSON, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 2:17-CV-1322 |
| ) | |
| v. ) | Magistrate Judge Lisa Pupo Lenihan |
| ) | |
| DR. MIN PARK, *et al*, ) | ECF No. 5 |
| ) | |
| Defendants. ) | |

**ORDER**

AND NOW, this 23rd day of January, 2018, for the reasons stated in the Memorandum Opinion filed contemporaneously herewith,

IT IS HEREBY ORDERED that the Motion to Dismiss filed by Defendant Correct Care Solutions, LLC (ECF No. 5) is denied as moot as to the statute of limitations and certificate of merit arguments, but it is granted without prejudice as to the failure to state a Monell claim.

_____
Lisa Pupo Lenihan
United States Magistrate Judge

Cc: Counsel of record
(*Via CM/ECF electronic mail*)